**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com
- *additional counsel on signature page -*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MONIKA SHEPHERDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE CRYPTO COMPANY, MICHAEL ALCIDE POUTRE III, and IVAN IVANKOVICH,<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Monika Shepherdson ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through

1

Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding The Crypto Company ("Crypto" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired common shares of Crypto between August 21, 2017 and December 18, 2017, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

2.     The Crypto Company is engaged in the business of advising regarding, investing in, trading and developing proprietary source code for digital assets with diversified exposure to digital asset markets. The Company's core services include consulting and advising companies regarding investment and trading in the digital asset

market and investing in a manner that diversifies exposure to the growing class of digital assets.

3.     On June 7, 2017, The Crypto Company entered into a Share Purchase Agreement with Croe, Inc., and as a result of the stock sale, stock dividend and share exchange, became a wholly owned subsidiary of Croe, Inc.  On October 25, 2017, Croe, Inc. changed its name to "The Crypto Company."

4.     Founded in 2017, the Company is headquartered in Malibu, California, and its stock trades on the Other OTC ("Other OTC") under the ticker symbol "CRCW."

5.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Crypto unlawfully engaged in a scheme to promote and manipulate the Company's stock; and (ii) as a result, Crypto's public statements were materially false and misleading at all relevant times.

6.     On December 19, 2017, the SEC temporarily suspended Crypto stock from trading due to concerns that the stock was being manipulated after the shares surged more than 17,000% in less than 3 months. The SEC said it was alarmed about "the accuracy and adequacy of information" relating to the compensation paid for promotion of its and statements in SEC filings about the plans of the Company's insiders to sell

their stock. Crypto stock was trading at $575 per share at the time trading was suspended and the suspension will remain in effect until January 3, 2018.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b).  Crypto's principal executive offices are located within this Judicial District.

11.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12.     Plaintiff, as set forth in the accompanying Certification, purchased Crypto securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosure.

13.     Defendant Crypto is incorporated in Nevada, and the Company's principal executive offices are located at 23805 Stuart Ranch Road, Suite 235, Malibu, California 90265.  Crypto's securities trades on the Other OTC under the ticker symbol "CRCW."

14.     Defendant Michael Alcide Poutre II ("Poutre") has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chairman.

15.     Defendant Ivan Ivankovich ("Ivankovich") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

16.     The Defendants referenced above in ¶¶ 14-15 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17.     The Crypto Company is engaged in the business of advising regarding, investing in, trading and developing proprietary source code for digital assets with diversified exposure to digital asset markets. The Company's core services include consulting and advising companies regarding investment and trading in the digital asset

market and investing in a manner that diversifies exposure to the growing class of digital assets.

18. On June 7, 2017, The Crypto Company entered into a Share Purchase Agreement with Croe, Inc., and as a result of the stock sale, stock dividend and share exchange, became a wholly owned subsidiary of Croe, Inc. On October 25, 2017, Croe, Inc. changed its name to "The Crypto Company."

## Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on August 21, 2017, Crypto filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended June 30, 2017 (the "2Q 2017 10-Q"). For the quarter, Crypto reported a net loss of $920,000, or $0.07 per diluted share, on revenue of $0.

20. In the 2Q 2017 10-Q, the Company stated, in relevant part:

Despite the material weaknesses reported above, our management believes that our financial statements included in this report fairly present in all material respects our financial condition, results of operations and cash flows for the periods presented and that this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report. In an effort to remedy any material deficiencies, management intends to segregate duties and controls among different officers and other key employees, whereby each officer is expected to have distinct responsibilities implementing checks and balances over the control of assets to protect the Company against any possibility of misstatement.

**Changes in Internal Control over Financial Reporting**

No changes in the Company's internal control over financial reporting have come to management's attention during the Company's last fiscal quarter that have materially affected, or are likely to materially affect, the Company's internal control over financial reporting

21.     The 2Q 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that "[t]he information contained in [the 2Q 2017 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods covered by [the 2Q 2017 10-Q]."

22.     On November 14, 2017, Crypto filed a quarterly report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended September 30, 2017 (the "3Q 2017 10-Q").  For the quarter, Crypto reported a net loss of $1.51 million, or $0.08 per diluted share, on revenue of $10,000.

23.     In the 3Q 2017 10-Q, the Company stated, in relevant part:

Despite the material weaknesses reported above, our management believes that our financial statements included in this report fairly present in all material respects our financial condition, results of operations and cash flows for the periods presented and that this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report. In an effort to remedy any material deficiencies, management intends to segregate duties and controls among different officers and other key employees, whereby each officer is expected to have distinct responsibilities implementing checks and balances over the control of assets to protect the Company against any possibility of misstatement.

**Changes in Internal Control over Financial Reporting**

No changes in the Company's internal control over financial reporting have come to management's attention during the Company's last fiscal quarter that have materially affected, or are likely to materially affect, the Company's internal control over financial reporting.

24.     The 3Q 2017 10-Q contained signed certifications pursuant to SOX by the Individual Defendants, stating that "[t]he information contained in [the 3Q 2017 10-Q]

7

fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods covered by [the 3Q 2017 10-Q]."

25.     The statements referenced in ¶¶ 19-24 above were materially false and/or misleading because they misrepresented and/or failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Crypto unlawfully engaged in a scheme to promote and manipulate the Company's stock; and (ii) as a result, Crypto's public statements were materially false and misleading at all relevant times.

## **The Truth Begins to Emerge**

26.     On December 18, 2017, the SEC issued a release announcing the suspension of trading in the securities of Crypto stock due to concerns that the stock is being manipulated after the shares surged more than 17,000% in less than 3 months. The release provided, in pertinent part:

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

**SECURITIES EXCHANGE ACT OF 1934**
**Release No. 34-82347 / December 18, 2017**

The Securities and Exchange Commission ("Commission") announced the temporary suspension, pursuant to Section 12(k) of the Securities Exchange Act of 1934 (the "Exchange Act"), of trading in the securities of The Crypto Company ("CRCW"), of Malibu, California at 9:30 a.m. EST on December 19, 2017, and terminating at 11:59 p.m. EST on January 3, 2018.

8

The Commission temporarily *suspended trading in the securities of The Crypto Company because of concerns regarding the accuracy and adequacy of information in the marketplace about, among other things, the compensation paid for promotion of the company, and statements in Commission filings about the plans of the company's insiders to sell their shares of The Crypto Company's common stock*. Questions have also arisen concerning potentially *manipulative transactions in the company's stock in November 2017*. This order was entered pursuant to Section 12(k) of the Exchange Act.

The Commission cautions broker-dealers, shareholders, and prospective purchasers that they should carefully consider the foregoing information along with all other currently available information and any information subsequently issued by the company.

Further, brokers and dealers should be alert to the fact that, pursuant to Rule 15c2-11 under the Exchange Act, at the termination of the trading suspension, no quotation may be entered unless and until they have strictly complied with all of the provisions of the rule. If any broker or dealer has any questions as to whether or not he has complied with the rule, he should not enter any quotation but immediately contact the staff in the Division of Trading and Markets, Office of Interpretation and Guidance, at (202) 551-5777. If any broker or dealer is uncertain as to what is required by Rule 15c2-11, he should refrain from entering quotations relating to The Crypto Company's securities until such time as he has familiarized himself with the rule and is certain that all of its provisions have been met.

If any broker or dealer enters any quotation which is in violation of the rule, the Commission will consider the need for prompt enforcement action. If any broker-dealer or other person has any information which may relate to this matter, contact Katharine Zoladz, Assistant Regional Director, Los Angeles Regional Office, at (323) 965-3998 or Roberto A. Tercero, Senior Counsel, Los Angeles Regional Office, at (323) 965-3891. The Commission appreciates the assistance of the Financial Industry Regulatory Authority and OTC Markets Group, Inc.

(Emphasis added.)

27.     Crypto stock was trading at $575 per share at the time trading was suspended and the suspension will remain in effect until January 3, 2018.

28.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

29.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Crypto common shares traded on the Other OTC during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

30.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Crypto common shares were actively traded on the Other OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Crypto or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

31.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

32.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

33.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of Crypto;

- whether Defendants caused Crypto to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Crypto securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

34.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of

the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

35.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Crypto common shares are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the Other OTC, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's common shares; and

- Plaintiff and members of the Class purchased and/or sold Crypto common shares between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

36.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

37.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants

omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### <u>Against All Defendants</u>

38.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39.     This Count is asserted against Crypto and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40.     During the Class Period, Crypto and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

41.     Crypto and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Crypto common shares during the Class Period.

42.    Crypto and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Crypto were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of information reflecting the true facts of Crypto, their control over, and/or receipt and/or modification of Crypto allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Crypto, participated in the fraudulent scheme alleged herein.

43.    Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Crypto personnel to members of the investing public, including Plaintiff and the Class.

44.     As a result of the foregoing, the market price of Crypto common shares was artificially inflated during the Class Period.  In ignorance of the falsity of Crypto's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Crypto common shares during the Class Period in purchasing Crypto common shares at prices that were artificially inflated as a result of Crypto's and the Individual Defendants' false and misleading statements.

45.     Had Plaintiff and the other members of the Class been aware that the market price of Crypto common shares had been artificially and falsely inflated by Crypto's and the Individual Defendants' misleading statements and by the material adverse information which Crypto's and the Individual Defendants did not disclose, they would not have purchased Crypto's common shares at the artificially inflated prices that they did, or at all.

46.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

47.     By reason of the foregoing, Crypto and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Crypto common shares during the Class Period.

## COUNT II

**Violation of Section 20(a) of The Exchange Act Against The Individual Defendants**

48.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49.     During the Class Period, the Individual Defendants participated in the operation and management of Crypto, and conducted and participated, directly and indirectly, in the conduct of Crypto's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.

50.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Crypto's financial condition and results of operations, and to correct promptly any public statements issued by Crypto which had become materially false or misleading.

51.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Crypto disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Crypto to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Crypto within the meaning of Section 20(a) of the Exchange Act. In this capacity, they

16

participated in the unlawful conduct alleged which artificially inflated the market price of Crypto common shares.

52.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Crypto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post- judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: December 21, 2017

Respectfully submitted,

**POMERANTZ LLP**

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6499
E-mail: jpafiti@pomlaw.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:(212) 661-8665
E-mail: jalieberman@pomlaw.com
E-mail: ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:    (312) 377-1184
E-mail: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Attorneys for Plaintiff*