Adam J. Thurston (SBN 162636)
Adam.Thurston@dbr.com
Jessica R. Medina (SBN 302236)
Jessica.Medina@dbr.com
DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067-1517
Telephone: 310-203-4000
Facsimile: 310-229-1285

Attorneys for Defendants
THE CRYPTO COMPANY, MICHAEL ALCIDE POUTRE III, AND IVAN IVANOKOVICH

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA SHEPARDSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE CRYPTO COMPANY, MICHAEL ALCIDE POUTRE III, AND IVAN IVANOKOVICH,<br><br>Defendants. | Case No. 2:17-cv-09157-CAS-FFM<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Date: February 26, 2018<br>Time: 10:00 a.m.<br>Judge: Hon. Christina A. Snyder<br>Place: 350 W. First Street<br>Courtroom 8D<br>Los Angeles, CA 90012<br><br>*[Notice of Motion and Motion to Dismiss and Proposed Order filed concurrently herewith]* |

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-cv-09157

**TABLE OF CONTENTS**

Page

I. Introduction .................................................................................................. 6
II. PLAINTIFF'S ALLEGATIONS ................................................................. 7
   A. The Parties and Claims ......................................................................... 7
   B. The Alleged False Statements .............................................................. 8
III. ARGUMENT ............................................................................................ 10
   A. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6) .......... 10
   B. The Complaint Fails To State A Claim For Securities Fraud ......................... 12
      1. The Complaint Fails to Allege a Misrepresentation or Omission of a Material Fact ........................................................................................ 13
      2. The Complaint Fails to Adequately Allege Scienter ................................... 16
   C. The Complaint Fails to Sufficiently Allege a Violation of Section 20(a) ...... 18
      1. Because the 10b-5 Claim Fails, The Section 20(a) Claim Also Must Be Dismissed .................................................................................................. 18
      2. The Complaint Does Not Adequately Allege that the Individual Defendants Exercised Control Over Crypto's Day-to-Day Operations .............................. 18
IV. Conclusion ................................................................................................ 20

91069957.1      - 2 -      MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F. Supp. 2d 1043 (C.D. Cal. 2012)..................................................................16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................................10

*Balistreri v. Pacifica Police Dept.*,
    901 F.2d 696 (9th Cir. 1988).................................................................................10

*Bartelt v. Affymax, Inc.*,
    2014 U.S. Dist. LEXIS 7903 (N.D. Cal. Jan. 21, 2014)........................................19

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................10

*In re Convergent Technologies Securities Litigation*,
    948 F.2d 507 (9th Cir. 1991).................................................................................11

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) .......................................12

*Falkowski v. Imation Corp.*,
    309 F.3d 1123 (9th Cir. 2002).................................................................12, 13, 16

*In re Glenfed Inc. Securities Litigation*,
    42 F.3d 1541 (9th Cir. 1994) (en banc).................................................................11

*In re Infineon Tech. AG Sec. Litig.*,
    2006 WL 2925680 (N.D. Cal. Sept. 11, 2006) .....................................................17

*Levine v. Safeguard Health Enterprises, Inc.*,
    No. SACV991575DOCANX, 2000 WL 33115907 (C.D. Cal. Sept. 12, 2000),
    *reversed on other grounds by Levine v. Safeguard Health Enterprises, Inc.*, 32
    F. App'x 276 (9th Cir. 2002) ................................................................................17

*Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009).................................................................................16

*McCormick v. Fund American Companies, Inc.*,
    26 F.3d 869 (9th Cir.1994)....................................................................................12

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................19

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 3 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
  547 U.S. 71 (2006) ...........................................................................................12, 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ............................................................................ *passim*

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ........................................................................................15

*Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*,
  50 F. Supp. 3d 1328 (C.D. Cal. 2014) ..........................................................11, 12, 13

*In re Oracle Corp. Securities Litigation*,
  627 F.3d 376 (9th Cir. 2010) ....................................................................................10

*Paracor Finance, Inc. v. General Electric Capital Corp.*,
  96 F.3d 1151 (9th Cir.1996) (en banc) ..............................................................12, 19

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ....................................................................................18

*SEC v. Reyes*,
  491 F. Supp. 2d 906 (N.D. Cal. 2007) .....................................................................14

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) .....................................................................................18

*In re Silicon Graphics, Inc. Securities Litigation*,
  183 F.3d 970 (9th Cir. 1999) ....................................................................................11

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ..............................................................................11, 17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .....................................................................................11, 12, 13, 16

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) ..................................................................................17

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ....................................................................................18

**STATUTES, RULES & REGULATIONS**

17 C.F.R. § 240.10b-5 ................................................................................................8, 12

15 U.S.C. § 78j(b) ..........................................................................................................12

15 U.S.C. § 78u–4(b)(2) ................................................................................................16

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1                                 - 4 -                    MPA ISO MOTION TO DISMISS
                                                                      CASE NO. 2:17-CV-09157

15 U.S.C. § 78u-4(b)(1) ............................................................................................. 11

15 U.S.C. § 78u-4(b)(2) ............................................................................................. 11

FRCP Rule 9(b) .................................................................................................. *passim*

FRCP Rule 11 ............................................................................................................ 15

Private Securities Litigation Reform Act ........................................................... *passim*

Rule 12(b)(6) ............................................................................................................. 10

Securities and Exchange Act of 1934 § 10(b) ................................................... *passim*

Securities and Exchange Act of 1934 § 20(a) ........................................... 8, 18, 19, 20

DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 5 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

## I. INTRODUCTION

The Complaint that has been filed in this case is utterly devoid of factual allegations to support a claim of fraud. The complaint rests entirely on allegations that The Crypto Company ("Crypto") stock experienced a "17,000%" increase in value in "less than three months," and the Securities and Exchange Commission ("SEC") issued a temporary suspension order on the trading of its stock, which expired by its own terms on January 3, 2018. Based upon these scant facts, Plaintiff accuses Defendants of engaging in an unspecified "scheme" to manipulate the price of Crypto's stock. But Plaintiff offers no facts to support this serious accusation. There is nothing in the Complaint describing the supposed scheme, what it consisted of, who was involved, or what was done to implement it. Similarly, the Complaint accuses Defendants of making false statements, or omitting material facts from its SEC filings, but fails to identify these statements or omissions, fails to explain why they were false or misleading, and fails to explain how they could have furthered the unspecified alleged "scheme" to manipulate Crypto stock.

Crypto is a company that invests in and provides consulting services to businesses in the area of blockchain technologies, the technology that tracks and verifies transactions in cryptocurrencies, as well as cryptocurrencies themselves. It also develops software and other technologies and acquires active revenue generating companies in the blockchain/cryptocurency space. Crypto has an impressive world class management and technology team and is well positioned given the recent explosion of global investment in crypto currencies. Filing a securities fraud action based upon nothing more than an increase in its stock price and a temporary (now expired) suspension order—without any evidence or allegations of any actual wrongdoing by Defendants, should not be countenanced.

This is precisely the kind of abusive complaint "laden with vague allegations of deception unaccompanied by a particularized explanation stating why the

defendant's alleged statements or omissions are deceitful," that the Private Securities Litigation Reform Act was designed to prevent. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Despite this fact, Plaintiff's counsel refused to either dismiss or amend the Complaint in response to Defendants' meet and confer efforts preceding this motion. Plaintiff's refusal to amend this facially deficient pleading is a clear indication that she has no facts to support these claims of fraud. Accordingly, this boilerplate and conclusory Complaint should be dismissed without leave to amend.

## II. PLAINTIFF'S ALLEGATIONS

### A. The Parties and Claims

***Parties.*** Plaintiff is an individual who allegedly purchased Crypto stock between August 21, 2017 and December 18, 2017 (the putative "Class Period"). ¶¶ 1, 12.[1]

Defendant Crypto is alleged to engage in the business of advising regarding, investing in, trading, and developing proprietary source code for digital assets with diversified exposure to digital asset markets. ¶ 2. Crypto's core services include consulting and advising companies regarding investment and trading in the digital asset market and investing in a manner that diversifies exposure to the growing class of digital assets. *Id*. Crypto's stock trades on the Other OTC under the ticker symbol "CRCW." ¶ 4.

Defendants Michael Poutre ("Poutre") and Ivan Ivankovich ("Ivankovich") (collectively, the "Individual Defendants") are current officers of Crypto. Poutre is Crypto's Chief Executive Officer. ¶ 14. Ivankovich is Crypto's Chief Financial Officer. ¶ 15.

***Claims.*** The Complaint alleges two counts. Count I is asserted against all Defendants for violation of Section 10(b) of the Securities and Exchange Act of

---

[1] All citations beginning with "¶" are to the Complaint filed in this action (Doc. 1).

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1
- 7 -
MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

1934 ("'34 Act"), and its implementing regulation, 17 C.F.R. § 240.10b-5. ¶¶ 38-47. Count II is asserted against the Individual Defendants and alleges control person liability under Section 20(a) of the '34 Act. ¶¶ 48-52.

### B. The Alleged False Statements

The Complaint cites statements made in two 10-Q filings by Crypto, each of which reported substantial net losses and little to no revenue. ¶¶ 19-24. The August 21, 2017 10-Q announced results for the quarter ending June 30, 2017 (the "2Q 2017 10-Q"), and reported a net loss of $920,000, or $0.07 per diluted share, on revenue of $0. ¶ 19. The November 14, 2017 10-Q announced results for the quarter ending September 30, 2017 (the "3Q 2017 10-Q"), and reported a net loss of $1.51 million, or $0.08 per diluted share, on revenue of $10,000. ¶ 22.

Plaintiff relies upon identical statements in each of the 10-Qs stating:

> Despite the material weaknesses reported above, our management believes that our financial statements included in this report fairly present in all material respects our financial condition, results of operations and cash flows for the periods presented and that this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report. In an effort to remedy any material deficiencies, management intends to segregate duties and controls among different officers and other key employees, whereby each officer is expected to have distinct responsibilities implementing checks and balances over the control of assets to protect the Company against any possibility of misstatement.
>
> **Changes in Internal Control over Financial Reporting**
>
> No changes in the Company's internal control over financial reporting have come to management's attention during the Company's last fiscal quarter that have materially affected, or are likely to materially affect, the Company's internal control over financial reporting

¶¶ 20, 23.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 8 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

The Complaint further cites the SOX certifications by the Individual Defendants in each of the 10-Qs stating that "[t]he information contained in [the 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company at the dates for the periods covered by [the 10-Q]." ¶¶ 21, 24.

Finally, the Complaint alleges in conclusory fashion that these statements were false and/or misleading because Defendants "failed to disclose that: "(i) Crypto unlawfully engaged in a scheme to promote and manipulate the Company's stock; and (ii) as a result, Crypto's public statements were materially false and misleading at all relevant times." ¶25. The Complaint contains no further allegations regarding the alleged "scheme," its details, how it was carried out, who carried it out, what specific actions were taken, or Defendants' specific roles, knowledge, or motivations.

Instead of alleging facts regarding the allegedly misleading statements or alleged "scheme," the Complaint relies entirely upon the issuance of a temporary suspension order ("Suspension Order") by the SEC on December 18, 2017, which expired under its own terms on January 3, 2018. ¶ 27. The Complaint merely points to the following portion of the Suspension Order:

> The Commission temporarily suspended trading in the securities of The Crypto Company because of concerns regarding the accuracy and adequacy of information in the marketplace about, among other things, the compensation paid for promotion of the company, and statements in Commission filings about the plans of the company's insiders to sell their shares of The Crypto Company's common stock. Questions have also arisen concerning potentially manipulative transactions in the company's stock in November 2017.

¶ 26.

The Suspension Order does not contain any findings by the SEC that Crypto or its employees violated the federal securities laws. Nor does the Suspension

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 9 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

Order specify the SEC's concerns, or the statements and transactions being referenced.

## III. ARGUMENT

### A. Legal Standard Governing Motions To Dismiss Under Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) of the of the Federal Rules of Civil Procedure ("FRCP") tests the legal sufficiency of the claims asserted in the complaint. Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Although the Court must accept all factual allegations as true, the Court "need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Twombly*, 550 U.S. at 545.

Rule 9(b) provides that the "circumstances constituting fraud or mistake shall be stated with particularity." FRCP 9(b). A securities fraud claim cannot survive a motion to dismiss under FRCP Rule 9(b) merely by alleging that certain statements were false. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). ("A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet [the Rule 9(b)] standard"); *see also In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 390 (9th Cir. 2010) ("Plaintiffs must 'demonstrate that a particular

1  statement, when read in light of all the information then available to the market, or
2  a failure to disclose particular information, conveyed a false or misleading
3  impression,' quoting *In re Convergent Technologies Securities Litigation*, 948 F.2d
4  507, 512 (9th Cir. 1991)); *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)
5  (under Rule 9(b), the complaint must allege "an account of the time, place and
6  specific content of the false representations as well as the identities of the parties to
7  the misrepresentations."). Rather, the complaint must allege "why the disputed
8  statement was untrue or misleading when made." *In re Glenfed Inc. Securities
9  Litigation*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc) (emphasis added).

10  In addition, where, as here, the allegations are asserted against more than one
11  defendant, Rule 9(b) requires that the Complaint differentiate the allegations and
12  inform each defendant separately of the allegations surrounding his alleged
13  participation in the fraud. *Swatrz*, 476 F.3d at 764–65.

14  In securities fraud cases such as this one, the Private Securities Litigation
15  Reform Act ("PSLRA") sets the pleading bar even higher. "The PSLRA modified
16  Rule 9(b)'s particularity requirement, "providing that a securities fraud complaint
17  [must] identify: (1) each statement alleged to have been misleading; (2) the reason
18  or reasons why the statement is misleading; and (3) all facts on which that belief is
19  formed." *Oklahoma Firefighters Pension & Ret. Sys. v. IXIA*, 50 F. Supp. 3d 1328,
20  1351 (C.D. Cal. 2014), quoting 15 U.S.C. § 78u-4(b)(1). See also, *In re Silicon
21  Graphics, Inc. Securities Litigation*, 183 F.3d 970, 996 (9th Cir. 1999). In addition,
22  to state a cognizable 10b-5 claim, a plaintiff must "state with particularity facts
23  giving rise to a strong inference that the defendant acted with [scienter]." 15 U.S.C.
24  § 78u-4(b)(2). See also, *Oklahoma Firefighters* 50 F. Supp. 3d at 1351. And the
25  "inference of scienter must be more than merely plausible or reasonable — it must
26  be cogent and at least as compelling as any opposing inference of nonfraudulent
27  intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).
28  *See also, Silicon Graphics*, 183 F.3d at 996.

"In enacting the PSLRA, 'Congress 'impose[d] heightened pleading requirements in actions brought pursuant to § 10(b) and Rule 10b-5.'" *Tellabs*, 551 U.S. at 320 (citing *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006)). The PSLRA's requirements 'prevent[ ] a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful.' *Metzler*, 540 F.3d at 1061 (citing *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1133 (9th Cir. 2002))." *Oklahoma Firefighters*, 50 F. Supp. 3d at 1351.

### B. The Complaint Fails to State a Claim for Securities Fraud

Plaintiff has not met her burden of pleading specific facts with particularity, as required by Rule 9(b), much less the heightened pleading requirements of the PLSRA requiring specific identification of the false or misleading statements, the reasons why they are false or misleading, and all facts supporting these claims. Nor has Plaintiff met her burden under the PSLRA of alleging specific facts with particularity against each individual defendant giving rise to a strong, cogent and compelling inference of scienter. In fact, the Complaint rests on precisely the kind of vague and conclusory allegations of an unspecified "scheme" that the PSLRA was designed to prevent.

Count I of the Complaint purports to assert a claim for securities fraud under Section 10(b) if the '34 Act (15 U.S.C. § 78j(b)) and its implementing regulation promulgated by the SEC, Rule 10b-5 (17 C.F.R. § 240.10b-5). The elements of a Rule 10b-5 claim are: "(1) a misrepresentation or omission of a material fact, (2) scienter, (3) reliance (4) a connection with the purchase or sale of a security, (5) economic loss, and (6) loss causation." *Oklahoma Firefighters*, 50 F. Supp. 3d at 1351; *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005); *see also Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir.1996) (en banc); *McCormick v. Fund American*

*Companies, Inc.*, 26 F.3d 869, 875 (9th Cir.1994).

### 1. The Complaint Fails to Allege a Misrepresentation or Omission of a Material Fact

Here, the Complaint fails to adequately allege the first and most fundamental element of a securities fraud claim: a misrepresentation or omission of a material fact. The Complaint merely alleges that unspecified financial and operational statements in two 10-Q statements are false or misleading because Crypto engaged in an unspecified "scheme to promote and manipulate the Company's stock." ¶ 25. The Complaint fails to identify which financial, operational, or cash flow statements are allegedly false or misleading, fails to state the reasons why, and fails to allege a single fact about the alleged scheme or what it involved. Such vague and conclusory allegations—devoid of particularized facts—are woefully inadequate to state a 10b-5 claim. *Tellabs*, 551 U.S. at 320; *Merrill Lynch*, 547 U.S. at 81; *Metzler*, 540 F.3d at 1061; *Falkowski*, 309 F.3d at 1133; *Oklahoma Firefighters*, 50 F. Supp. 3d at 1351.

Further, the scant and conclusory facts that are alleged—even if accepted as sufficiently particularized (which they certainly are not)—do not support an inference of falsity. There is nothing alleged in the complaint to explain how any of the statements in the two 10-Q statements are rendered false or misleading by the purported "scheme to promote and manipulate the Company's stock." There is no allegation that either of the 10-Q statements actually misstates information about Crypto's financial condition, results of operations, or cash flows for the periods presented. The only specific statements from the 10-Qs identified in the Complaint are that the 2Q 2017 10-Q reported a net loss of $920,000, or $0.07 per diluted share, on revenue of $0, and that the 3Q 2017 10-Q reported a net loss of $1.51 million, or $0.08 per diluted share, on revenue of $10,000. ¶¶ 19, 22. There is no explanation in the Complaint as to how such statements are false or misleading, or how the unspecified purported "scheme" would tend to make them misleading.

Indeed, it defies logic to suggest that reporting losses on little or no revenue could somehow misleadingly promote or inflate the price of Crypto's stock.  *SEC v. Reyes*, 491 F. Supp. 2d 906, 910 (N.D. Cal. 2007) (actual revenue and cash flow "are widely, if not universally, regarded as the best indicators of a company's financial health.")

Nor does the Complaint's quotation of the Suspension Order support an inference of any false or misleading statement or omission by Defendants.  The Suspension Order makes reference to "concerns about the accuracy and adequacy of information in the marketplace about, among other things, the compensation paid for promotion of the company, and statements in Commission filings about the plans of the company's insiders to sell their shares of The Crypto Company's common stock."  However, the Suspension Order does not elaborate further about either of these two "concerns."  There is no information in the Suspension Order regarding what compensation for promotion is being referenced, or why it caused concern.  Nor does the Suspension Order identify the statements in Crypto's SEC filings regarding insider plans to sell stock that are being referenced, or why such statements would be cause for concern.  Nor does the Complaint shed any light on these issues.  In fact, the Complaint contains no allegations whatsoever which elaborate upon these statements from the Suspension Order, how they relate to the supposed unspecified "scheme," or why they would make any statements in the 10-Qs false or misleading.

The Suspension Order also makes reference to "questions" concerning "potentially manipulative transactions in the company's stock in November 2017."  Again, however, the transactions in question are not identified, and there is no information in the Suspension Order about why such transactions raise "questions" or are "potentially manipulative."  And again, the Complaint contains no allegations whatsoever elaborating on this statement in the Suspension Order, how it relates to the supposed unspecified "scheme," or why they would make any statements in the

10-Qs false or misleading.

In the absence of any factual allegations elaborating on the Suspension Order statements, or relating them to Plaintiff's theory of fraud, it is not possible for Defendants to discern what wrongful conduct is being alleged against them, or to defend themselves against such allegations. *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (dismissing complaint due to lack of particularized allegations permitting the defendants to discern "the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.")

The threadbare allegations in the Complaint do not come close to satisfying either Rule 9(b)'s or the PSLRA's heightened pleading requirements to state a securities fraud claim under Rule 10b-5. In fact, the Complaint contains little more than a boilerplate recitation of the elements and (apparently) recycled allegations from other complaints.[2] Count I of the Complaint does not contain a single specific factual allegation of fraud. Instead is vaguely references the "false statements specified above" (¶¶ 40, 43), recites the language of Rule 10b-5 (¶ 41), and purports to allege scienter by vaguely referencing Defendants' "receipt of information reflecting the true facts of Crypto" (¶ 42). It is impossible to discern the meaning of these vague, boilerplate allegations. The Complaint is a textbook example of the kind of baseless lawsuit the PSLRA was designed to prevent. *Metzler*, 540 F.3d at 1061 (PSLRA designed to "prevent[ ] a plaintiff from skirting dismissal by filing a

---

[2] For example, paragraph 29 of the Complaint makes reference to "revelation of the alleged corrective disclosures," but there is no reference to any "corrective disclosures" anywhere else in the Complaint, and no such corrective disclosures were made in the 10-Q filings at issue. Similarly, paragraph 49 makes reference to "adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols," but there is no reference to data security protocols anywhere else in the Complaint, nor does this appear to bear any relation to any "scheme" to manipulate Crypto stock or to the quoted statements from the 10-Q filings at issue. Both of these allegations appear to be recycled from other cases, and they demonstrate the lack of care taken in preparing the Complaint, as well as its lack of substance. Indeed, the Complaint is so facially deficient that it does not even satisfy Rule 11.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 15 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful."); *Falkowski*, 309 F.3d at 1133).

### 2. The Complaint Fails to Adequately Allege Scienter

As discussed above, a complaint in a PSLRA case must allege facts that present more than just a plausible inference of scienter. The complaint must "state with particularity facts giving rise to a ***strong*** inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). To qualify as strong, the "inference of scienter must be more than merely plausible or reasonable – it must be ***cogent and at least as compelling as any opposing inference*** of nonfraudulent intent." *Tellabs*, 551 U.S. at 314 (emphasis added). *See also In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1060 (C.D. Cal. 2012). "[T]o the extent a plaintiff alleges fraud claims against individual defendants, the plaintiff ***must allege facts supporting a strong inference of scienter as to each defendant.***" *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 182 (4th Cir. 2009) (emphasis added).

Here, the Complaint contains only vague, conclusory, boilerplate allegations regarding scienter; there are no particularized factual allegations to support even a plausible inference of fraudulent intent, much less one that is as cogent, and compelling as any other inference. The Complaint's scienter allegations are found at paragraphs 42 and 43 of the Complaint. First, the Complaint alleges in paragraph 42:

> Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Crypto were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants by virtue of their receipt of

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 16 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-cv-09157

> information reflecting the true facts of Crypto, their control over, and/or receipt and/or modification of Crypto allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Crypto, participated in the fraudulent scheme alleged herein.

Next, the Complaint alleges in paragraph 43:

> Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Crypto personnel to members of the investing public, including Plaintiff and the Class.

The Complaint fails to allege any specific facts with particularity supporting these conclusory allegations. Even under Rule 9(b), conclusory allegations that a defendant "knew" that statements were false are insufficient as a matter of law to plead fraud with particularity in the absence of particularized facts supporting such an inference. *See Swartz*, 476 F.3d at 765. *See also*, *In re Infineon Tech. AG Sec. Litig.*, 2006 WL 2925680, at *2 (N.D. Cal. Sept. 11, 2006) (dismissing officer defendants where plaintiffs failed to plead specific facts giving rise to a strong inference that they knew about the price fixing at the time). Such allegations fall far short of the cogent and compelling factual allegations that are required under the PSLRA. Indeed, the Complaint does not even allege that Defendants sold stock or otherwise profited from the unspecified fraudulent statements or "scheme." *See WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1056 (9th Cir. 2011) (dismissing a 10b-5 claim where plaintiffs failed to allege a "cogent scienter theory explaining why" the defendant company would engage in the alleged fraudulent scheme); *Levine v. Safeguard Health Enterprises, Inc.*, No.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 17 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

SACV991575DOCANX, 2000 WL 33115907, at *5 (C.D. Cal. Sept. 12, 2000), *reversed on other grounds by Levine v. Safeguard Health Enterprises, Inc.*, 32 F. App'x 276, 277 (9th Cir. 2002) (dismissing complaint that did not allege facts that the defendants benefitted "in some concrete and personal way from the purported fraud"); *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (finding the lack of insider sales dispositive on the question of scienter, stating that, "[w]hen insiders miss the boat this dramatically, their sales do not support an inference that they are preying on ribbon clerks who do not know what the insiders know"); *Metzler*, 540 F.3d at 1067 ("Digiovanni meanwhile sold nothing at all, suggesting that there was no insider information from which to benefit.  So, when the allegedly improper stock transactions are viewed as a whole, they fail to raise the necessary 'strong inference' of scienter required by the PSLRA."); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("[W]e assume that the defendant is acting in his or her informed economic self-interest", so that if "plaintiffs' view of the facts defies economic reason ... [it] does not yield a reasonable inference of fraudulent intent").

### C. The Complaint Fails to Sufficiently Allege a Violation of Section 20(a)

#### 1. Because the 10b-5 Claim Fails, the Section 20(a) Claim Also Must Be Dismissed

As explained above, Plaintiffs have not stated an actionable claim for a primary violation of Rule 10b-5.  Accordingly, the Court also should dismiss the Section 20(a) claim against the Individual Defendants.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) ("Section 20(a) claims may be dismissed summarily . . . [however,] if a plaintiff fails to adequately plead a primary violation of section 10(b).").

#### 2. The Complaint Does Not Adequately Allege that the Individual Defendants Exercised Control Over Crypto's Day-to-Day Operations

The Section 20(a) claim should be dismissed because the primary Rule 10b-5

claim upon which it based has been inadequately alleged. But it should also be dismissed for the separate and independent reason that the allegations in Count II are inadequate to state a Section 20(a) claim even if the primary violation had been adequately alleged.

To state a Section 20(a) claim, Plaintiff must plead that "the defendant exercised actual power or control over the primary violator." *Bartelt v. Affymax, Inc.*, 2014 U.S. Dist. LEXIS 7903, at *19 (N.D. Cal. Jan. 21, 2014). This requires Plaintiff to plead that Messrs. Poutre and Ivankovich exercised "a significant degree of day-to-day operational control [over Crypto], amounting to the power to dictate [its] conduct or operations." *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000). Status as an officer of a corporation, by itself, is insufficient to establish a presumption of control liability. *See Paracor*, 96 F.3d at 1163-64.

Here, the Complaint merely continues to assert inadequate, conclusory allegations. The Complaint alleges:

> the Individual Defendants participated in the operation and management of Crypto, and conducted and participated, directly and indirectly, in the conduct of Crypto's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's inadequate internal safeguards in data security protocols.
>
> Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Crypto disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Crypto to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Crypto within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Crypto common shares.

DRINKER BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

91069957.1

- 19 -

MPA ISO MOTION TO DISMISS
CASE NO. 2:17-CV-09157

¶¶ 49, 51.

These allegations, like those in the first Count for the primary violation of securities fraud, fail to allege with any specificity facts supporting the conclusion that the Individual Defendants exercised actual day-to-day operational control of Crypto. The allegations stand for nothing more than the threadbare proposition that the Individual Defendants were officers of the company. Such allegations are insufficient as a matter of law to support a Section 20(a) claim. Accordingly, Count II should be dismissed for this separate and independent reason.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint in its entirety without leave to amend. The Complaint does not plead with particularity even the most basic facts to support a Rule 10b-5 claim, or a Section 20(a) claim against Defendants.

Dated: January 19, 2018                                  DRINKER BIDDLE & REATH LLP


By: /s/ Adam J. Thurston
     Adam J. Thurston

Attorneys for Defendants
THE CRYPTO COMPANY, MICHAEL ALCIDE POUTRE III, AND IVAN IVANOKOVICH